COURTNEY *et al. v.* PRESIDENT, ETC., OF INSURANCE CO. OF NORTH AMERICA *et al.*

*(Circuit Court of Appeals, Eighth Circuit.* February 1, 1892.)

1. CIRCUIT COURT OF APPEALS—JURISDICTION.
   On a bill to foreclose a mortgage, a decree of sale was rendered in the circuit court before the creation of the circuit court of appeals. After the creation of that court a decree was entered on a cross-bill setting up a mechanic's lien on the premises. *Held,* that an appeal to the circuit court of appeals would lie from the latter decree, though not from the former.

2. SAME—AMOUNT IN CONTROVERSY.
   When the circuit court obtains jurisdiction of a suit to foreclose a mortgage involving more than $2,000 by reason of diverse citizenship, it has jurisdiction to determine the priority of all liens upon the premises set up by cross-bill, regardless of the amounts claimed; and, as the jurisdiction of the circuit court of appeals is not limited to any amount, it may entertain an appeal from a decree of the circuit court on such a cross-bill, refusing to recognize a lien for less than $2,000.

3. MECHANICS' LIENS—WHEN ATTACHES.
   Comp. St. Neb. c. 54, § 3, provides that on filing the proper account for a mechanic's lien the same shall operate as a lien "for two years from the commencement of the labor or the furnishing such materials." *Held,* that the word "commencement" qualifies both "labor" and "furnishing," and the material-man's lien dates from the time of the first delivery.

4. SAME—ACCOUNT AND AFFIDAVIT.
   As against the owner of the building, as well as a mortgagee thereof who received his mortgage before the end of the four months allowed for filing the account, the material-man's lien attaches from the date of the first delivery, although the account and affidavit do not show such date, and only contain the date when the money became due, which was after the last delivery of material.

Appeal from the Circuit Court of the United States for the District of Nebraska. Reversed.

*Carroll S. Montgomery, Eugene Montgomery,* and *Montgomery, Charlton & Hall,* for appellants.

*John C. Wharton* and *William Baird,* for appellees.

Before CALDWELL, Circuit Judge, and SHIRAS and THAYER, District Judges.

SHIRAS, District Judge. On the 25th of November, 1889, the appellees filed a bill in equity in the circuit court for the district of Ne-

braska, for the purpose of foreclosing a mortgage executed by Minnie L. and Fremont N. Jaynes upon certain realty situated in the city of Omaha, Neb., and given to secure the payment of the note described in the mortgage, the note and mortgage being dated October 9, 1888. To this bill, in addition to the mortgagors, there were made defendants a number of parties holding liens upon the realty, including the firm of Courtney & McBride. The latter answered the bill, and also in due season filed a cross-bill, in which it was averred that on the 12th day of September, 1888, a contract was entered into between said firm and Minnie L. Jaynes, who was the owner of the realty subsequently mortgaged, whereby the firm agreed to furnish certain brick to be used in the erection of a building upon the realty; that in pursuance of such contract the said firm, beginning on the 12th day of September, 1888, delivered 284,000 brick between that date and the 21st of November following, which were used in the construction of a building upon the premises described in the mortgage; that on the 19th day of March, 1889, the said firm filed in the office of the register of deeds in and for Douglas county, Neb., a claim for a mechanic's lien in accordance with the provisions of the statute of the state of Nebraska, the sum claimed as a lien being $901.25; that this sum and interest remained due and unpaid; and that the lien thus created was prior and superior to the lien of the mortgage. Answering the cross-bill, the mortgagees admitted all the averments thereof except that in which priority of lien was claimed. Upon the hearing the circuit court found and adjudged that the mortgage was a valid lien upon the realty, and adjudged that there was due complainants thereon the sum of $17,563.25; that there was due the firm of Courtney & McBride the sum of $986.05, which amount was a valid lien upon the realty; but that the same dated from November 26, 1888, and was therefore subject to the lien of the mortgage. The premises were sold by a master, and the amount realized was not sufficient to pay all the liens, and as a consequence Courtney & McBride have received nothing upon their claim. When the decree establishing the order and priority of the several liens was entered, it was duly excepted to, and the said Courtney & McBride forthwith perfected their appeal to this court, assigning as the principal error relied upon, the holding that the lien of appellants dated only from November 26, 1888, and was therefore inferior to the lien of the mortgage. In this court the appellee filed a motion to dismiss the appeal for want of jurisdiction, which motion, by agreement of counsel, was submitted with the main case. In support of the motion, it is suggested that, as the first argument and submission of the case was had, and the decree of the court ordering a sale of the premises was entered, on the 17th day of June, 1890, before the adoption of the act creating this court, jurisdiction to entertain the appeal does not exist. If the appeal was from that decree, the position would be well taken, but such is not the fact. The order or decree appealed from is based upon the cross-bill filed by appellants, and it was rendered July 27, 1891, at which time the act creating this court was in full force, and the right to an appeal beyond

question. Equally ill-founded is the objection to the jurisdiction based upon the fact that the amount due the appellants is less than $2,000, the contention being that no appeal or writ of error will lie to this court unless the matter in dispute exceeds $2,000. The argument is that, as the statute of August 13, 1888, requires that sum to be involved before the circuit court can take jurisdiction originally of a cause, it must be held that the same limitation is applicable to the jurisdiction of this court. No such limitation is found in the act creating this court, and defining the jurisdiction thereof. It may be said, generally, that it is the purpose of the act of March 3, 1891, creating this court, to provide in all civil causes an appeal to an appellate court, the appellate jurisdiction being divided between the supreme court and the circuit courts of appeal, according to the nature of the questions involved. Therefore, if it be true that the circuit court had jurisdiction of the issues presented by the cross-bill and the answer thereto, this court has jurisdiction to review the decree settling such issues. There is and can be no question raised as to the jurisdiction of the circuit court over the bill filed to foreclose the mortgage held by the complainant company, that company being a corporation created under the laws of the state of Pennsylvania, the defendants to the bill being citizens of Nebraska, the amount claimed being largely in excess of $2,000, and the property included in the mortgage being situated in Nebraska, and therefore within the district wherein the suit was brought. Having full and complete jurisdiction of the parties to the suit and of the property involved therein, the court had the right to hear and determine all questions necessary to be settled in order to enter a proper decree of foreclosure, to secure an advantageous sale of the property, and to distribute the proceeds of the sale. It had the right to entertain all cross-bills filed by any one or more of the defendants for the purpose of establishing any liens held by them upon the mortgaged property, the jurisdiction over the same not being dependent upon the citizenship of the adverse parties thereto, nor upon the amount in dispute therein, but being sustained by the jurisdiction over the original proceedings for the foreclosure of the mortgage. The motion to dismiss the appeal is therefore overruled, and we pass to the consideration of the question of the priority of the mortgage over the lien of the appellants.

This will require, in the first instance, an examination of the sections of the Nebraska statute creating liens in favor of parties furnishing materials to be used in the erection of buildings. Sections 1, 3, c. 54, Comp. St. Neb. p. 423, read as follows:

"Section 1. Any person who shall perform any labor for, or furnish any material or machinery or fixtures for, the erection, reparation, or removal of any house, mill, manufactory, or building or appurtenance, by virtue of a contract, express or implied, with the owner thereof or his agents, shall have a lien to secure the payment of the same upon such house, mill, manufactory, building, or appurtenance, and the lot of land upon which the same shall stand."

"Sec. 3. Any person entitled to a lien under this chapter shall make an account in writing of the items of labor, skill, machinery, or material furnished,

or either of them, as the case may be, and after making oath thereto shall,. within four months of the time of performing such labor or skill, or furnishing such material or machinery, file the same in the office of the register of deeds, * * * which account, so made and filed, shall be recorded, * * * and shall from the commencement of such labor or the furnishing such materials for two years after the filing of such lien operate as a lien. * * *"

The evidence in the case shows that the materials furnished by appellants were delivered between the dates of September 11 and November 21, 1888, and that the claim for the lien was filed in the register's office on the 19th day of March, 1889, and the claim of the appellee is that, in the case of materials furnished, the lien does not attach until the completed delivery of the materials, and therefore in this case the lien of appellants did not attach until November 20, 1888, the day when the last delivery of brick was made.

We do not so construe the statute. The provision of section 3 is that the account when duly filed "shall from the commencement of such labor or the furnishing such materials for two years after the filing of such lien operate as a lien," etc. The word "commencement" qualifies both phrases used to describe the constituents of the lien, to-wit, "such labor" and "the furnishing such materials." It is not questioned that in the case of a lien for labor done such lien dates from the commencement of the doing thereof, and we do not believe that it was the intent to change the rule in the case of the furnishing materials. The statute was passed for the express purpose of protecting parties who should perform labor or furnish materials for the erection of buildings, and it would largely defeat the beneficent purpose of the statute if the construction urged on behalf of appellee should be given to the section above quoted. If the lien for materials does not attach until the entire contract of delivery is completed, then it is always within the power of the owner of the building to defeat the attaching of the lien by a sale of the property just before the delivery is completed, or to render it valueless by giving mortgages or other liens thereon after the value of the realty has been largely increased by the use of materials furnished, but before the material-man, by a complete delivery, has become entitled to a lien. The furnishing materials under a contract for use in the erection of a building is a continuing act, beginning with the first delivery, and ending with the last, of the particular articles contracted to be furnished; but the act of furnishing extends from the first day to the last, inclusive, and therefore, under section 3 of the Nebraska statute, the party furnishing the materials, to become entitled to a lien, must, within four months of the time of furnishing said materials,—that is, within four months after the completion of the act of furnishing the materials,—file the necessary account in writing, under oath; and, when this is done, then the lien dates from the commencement of the act of furnishing the materials contracted to be delivered. We understand this to be the construction placed upon the statute by the supreme court of Nebraska in *Ansley* v. *Pasahro*, 22 Neb. 662, 35 N. W. Rep. 885, and the decision of that court upon the question is, of course, conclusive upon this court, even though we might be

inclined to a different view of the statute, which, however, as already stated, we do not hold, and our conclusion is that the lien for materials furnished under the provisions of the statute of Nebraska dates from the time when the delivery thereof was commenced.

A more doubtful question arises upon the form of the account filed by appellants in the register's office, it being claimed by the appellee that upon its face it claims a lien only from November 26, 1888, and that the appellants cannot be permitted to assert that the lien attached at an earlier day; and it was upon this view, as we understand it, that the circuit court based the conclusion that the lien of appellants was inferior to that of the appellee. The affidavit filed in the register's office states the facts in regard to the furnishing the brick to be used in the erection of the building, and then continues as follows:

"A statement is hereto attached marked 'Exhibit B,' and made a part hereof, showing the number of brick furnished under said contract, and the payments thereon, and the amount due said Courtney & McBride from the said M. L. Jaynes, which amount, after allowing all payments and just credits thereon, is the full sum of $901.25. The said Courtney & McBride desire to secure, and hereby claim, a lien upon the above-described real estate, buildings, and the appurtenances thereto belonging, for the said sum of $901.25, with interest thereon at the rate of 7 per cent. per annum from the 26th day of November, 1888, pursuant to the statutes of the state of Nebraska in such cases made and provided."

The statement attached to the affidavit is as follows:

"OMAHA, NEB., Nov. 26, 1888.

"Mrs. M. L. Jaynes, Omaha, Neb., to Courtney & McBride, Dr., Brick Manufacturer; Yard, 16th Street, North of Fair Grounds.

| | | |
|---|---:|---:|
| Nov. 26th, 285,000, $7.00, | | $1,995 00 |
| By cash, | | 850 00 |
| | | $1,145 00 |
| Extra hauling, per T. J. Quick, | | 6 25 |
| | | $1,151 25 |
| By cash, $250, | | 250 00 |
| | | $901 25 |

"COURTNEY & McBRIDE."

The statement filed for the purpose of establishing a lien does not state from what date the lien is claimed, and the account attached does not state when the delivery of the brick was begun. There is, however, no dispute as to the fact that the first delivery under the contract was on September 12th. This is admitted in the pleadings. So far as the owner of the property is concerned, it cannot be claimed that she was misled in this matter, or that she would not know when the lien would attach. She knew the date of the contract and the day when the appellants commenced to deliver the brick contracted for, and, as the statute gives a lien from that date, she could not be in doubt as to the purpose of appellants in making claim for a lien for the balance due them, "pursuant to the statutes of the state of Nebraska in such cases made

and provided." We think, therefore, the statement was sufficient, as between the appellants and the owner of the property, to create a lien from the date of the first delivery of brick under the contract. The fact that the bill attached to the affidavit, as above quoted, bears date November 26th, cannot be held to be a statement that the lien is claimed from that date. That date is given in the bill as a statement of the time when the payment became due, and could not have misled the property owner in any way.

Does the case stand in any different position as between the mortgagee and the lienholders? The record shows that the mortgage was executed October 9, 1888, and was assigned to the appellee March 13, 1889; therefore it cannot be claimed that either the original mortgagee or the appellee was in any way misled by the form of the statement filed for the purpose of securing a lien, because it was not so filed until after the execution and assignment of the mortgage. Knowing the fact that the mortgagor was erecting a building upon the premises, the mortgagee and appellee were bound to take notice that the parties furnishing the materials for the erection of the building were entitled, under the laws of Nebraska, to establish a lien for the sums due them, by taking the steps provided in the statute within four months after the furnishing the material was completed, and they therefore took the mortgage with notice of the rights of the appellants. Thus it is said by the supreme court of Nebraska in *Doolittle* v. *Plenz*, 16 Neb. 156, 20 N. W. Rep. 116:

"A party purchasing a building within four months from the time of its completion, or after repairs have been made upon it, takes it subject to any legitimate claim against it for erecting or repairing the same. The law is notice to every one that such lien may be filed, and it behooves the party purchasing the premises to see that all such claims are satisfied or secured, and no person can be a *bona fide* purchaser, as against such liens, by simply taking a deed from the owner of the fee."

If, therefore, the appellants have established a lien upon the premises, which, as between them and the owner of the property, dates from September 12, 1888, and if the mortgage was executed and assigned at a time when the law charged the parties taking the same with notice of the right of appellants to claim a lien from that date, it follows that the rights of the lienholders are superior, and not inferior, to the lien of the mortgage.

The decree appealed from is therefore reversed, and the cause is remanded to the circuit court, with instructions to enter a decree awarding priority to the lien held by the appellants over that created by the mortgage, and directing payment of the amount due the appellants from the proceeds of the sale before payment to the mortgagee, and also awarding costs to appellants, including the costs of this appeal.